UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| RENAL CARE GROUP INDIANA, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CAUSE NO.: 1:17-CV-65-TLS |
| | ) |
| CITY OF FORT WAYNE, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

This matter comes before the Court on a Motion for Judgment on the Pleadings as to Count I [ECF No. 24], filed by Plaintiff Renal Care Group Indiana LLC. The Plaintiff filed its Complaint [ECF No. 1] on February 23, 2017. Defendant City of Fort Wayne filed its Answer [ECF No. 6] on April 3, 2017. In its Complaint, the Plaintiff brings four causes of action against the Defendant: Declaratory relief under the federal Declaratory Act (Count I) or, in the alternative, under the Indiana Uniform Declaratory Judgment Act (Count II); breach of contract (Count III); and a private cause of action under the Medicare Secondary Payer Act (Count IV). The instant matter involves only declaratory relief as requested in Count I, and has been fully briefed and is ripe for review.

**FACTUAL BACKGROUND**

The following background is taken from the pleadings. The Plaintiff, a domestic corporation organized under the laws of Delaware with its principal place of business in Waltham, Massachusetts, operates a dialysis facility in Fort Wayne, Indiana. (Compl. ¶ 1, ECF

No. 1.) The Defendant operates a municipal retiree health benefits plan, the City of Fort Wayne Employee Benefit Plan (Plan), which provides health care medical benefits to municipal retirees. (Answer ¶ 2, ECF No. 6.) One participant in the Defendant's Plan, the Patient,[1] received treatment at the Plaintiff's dialysis facility in Fort Wayne. (Compl. ¶ 1.) The Plan provided health care coverage for the Patient from March 11, 2014, through May 31, 2014. (Answer ¶ 9.) During that time period, the Defendant paid the Plaintiff directly for the dialysis services that the Patient received from the Plaintiff at an agreed upon rate set by an insurance network, the Parkview Signature Network. (*Id.* ¶ 24.) On June 1, 2014, the Patient became entitled to Medicare coverage based on the Patient's end-stage renal disease (ESRD) diagnosis. (*Id.* ¶ 25.) Because the Patient was newly eligible for Medicare, the City terminated the Patient's coverage under the Plan beginning on June 1, 2014. (*Id.* ¶ 26.) The City admits that it "took into account the Patient's eligibility for and entitlement to Medicare and terminated coverage for the Patient so that he would no longer be covered by the Plan beginning June 1, 2014." (*Id.* ¶ 27.)

**STANDARD OF REVIEW**

Under Federal Rule of Civil Procedure 12(c), a party may move for judgment after the plaintiff has filed a complaint and the defendant has filed an answer. *See* Fed. R. Civ. P. 12(c). The reviewing court must consider only the pleadings, which "include the complaint, the answer, and any written instruments attached as exhibits." *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 452 (7th Cir. 1998) (citations omitted). "Where the plaintiff moves for judgment on the pleadings, the motion should not be granted unless it appears beyond doubt that the non-moving party cannot prove facts sufficient to support [its] position." *Hous. Auth. Risk*

---

[1] The parties have not referred to the Patient by name in the pleadings to protect patient confidentiality.

*Retention Grp. v. Chi. Hous. Auth.*, 378 F.3d 596, 600 (7th Cir. 2004) (citing *All Am. Ins. Co. v. Broeren Russo Const., Inc.*, 112 F. Supp. 2d 723, 728 (C.D. Ill. 2000)) (internal quotations omitted). Judgment may be granted on the pleadings only if "all material allegations of fact are admitted or not controverted in the pleadings and only questions of law remain to be decided by the district court." 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1367 (3d. 2017).

## ANALYSIS

The Plaintiff has moved for Judgment on the Pleadings on Count I only. Count I seeks a declaratory judgment under 28 U.S.C. § 2201(a), stating that the Defendant violated the Medicare Secondary Payer Act, 42 U.S.C. § 1395y (MSP Act) when it terminated coverage for the Patient, and that the Defendant was required to remain the primary payer responsible for the Patient's dialysis treatments through the end of the Patient's 30-month coordination of benefits period. The Defendant attacks both the procedure and the merits of the Plaintiff's Rule 12(c) motion.

### A. Standing to Pursue Declaratory Relief

The Plaintiff contends that it has standing to pursue declaratory relief. A federal court may issue a declaratory judgment to a party so long as the parties present a justiciable case or controversy. *See Vickers v. Henry Cty. Sav. & Loan Ass'n*, 827 F.2d 228, 230 (7th Cir. 1987). A cause of action for a declaratory judgment is justiciable when "there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the

issuance of a declaratory judgment." *Id.* at 231 (quoting *Alcan Aluminum Ltd. v. Dep't of Revenue of Or.*, 724 F.2d 1294, 1298 (7th Cir.1984)).

The Plaintiff has met its standing requirements. The Plaintiff asserts that, under the MSP Act, the Defendant has had to pay for the Patient's dialysis treatment since June 1, 2014. The Defendant has not paid the Patient because the Defendant denies that has an obligation to pay. Medicare, meanwhile, has reimbursed the Plaintiff at a lower rate than the Defendant was required to pay. The Plaintiff thus argues that it has incurred an economic injury caused by this dispute over whether a legal requirement applies to the Defendant. Declaratory relief would redress such an injury.

The Plaintiff has, therefore, brought a justiciable cause of action for declaratory relief as to Count I, and the Court may proceed to the merits of the Plaintiff's Rule 12(c) motion.

**B.    The Medicare Secondary Payer Act**

The Plaintiff argues that the Defendant violated the MSP Act when the Defendant terminated the Patient's coverage under the Plan on June 1, 2014. Before 1980, Medicare generally paid for health care services regardless of whether a Medicare beneficiary was covered by another health plan. *United Seniors Ass'n v. Philip Morris USA*, 500 F.3d 19, 21 (1st Cir. 2007). In an effort to reduce health care costs, Congress passed the MSP Act in 1980. *Id.* Under certain circumstances, the MSP Act makes Medicare a secondary payer for health care services provided to Medicare beneficiaries if the beneficiary is covered by another primary payer. *See* 42 U.S.C. § 1395y(b).

The MSP Act applies to "group health plans," which means "a plan (including a self-insured plan) of, or contributed to by, an employer (including a self-employed person) or

4

employee organization to provide health care (directly or otherwise) to the employees, former employees, the employer, others associated or formerly associated with the employer in a business relationship, or their families." *See* 42 U.S.C. § 1395y(b)(1)(A)(v) (citing I.R.C. § 5000(b)(1) for definition, without regard to I.R.C. § 5000(d) (excluding governmental entities)). The Defendant admitted in its Answer that the Plan is a "municipal retiree health benefits plan." (Answer ¶ 2.) The Plan, therefore, qualifies as a "group health plan" under the MSP Act.

The MSP Act therefore places certain requirements on the Plan. First, the Plan may not take into account whether a plan participant is Medicare eligible during the 30-month coordination period in which the plan participant first becomes Medicare eligible. 42 U.S.C. § 1395y(b)(1)(C)(i)–(ii). Second, the Plan must pay primary to Medicare during this 30-month coordination period. 42 U.S.C. § 1395y(b)(2)(A)(i). The 30-month coordination period begins on the first day of the third calendar month after a plan participant is diagnosed with ESRD and begins a regular course of renal dialysis. *See* 42 U.S.C. § 426-1(a), (b)(1)(A).

The Defendant has admitted that it runs a group health plan, that the Patient participated in the Defendant's group health plan, and that the Patient received health care coverage through the plan from March 11, 2014, through May 31, 2014. (Answer ¶ 2, 9.) The Defendant further acknowledged that from March 11, 2014, through May 31, 2014, the Plaintiff provided dialysis treatment to the Patient and submitted claims to the Defendant for payment, which the Defendant paid at a rate set by an insurance network. (Answer ¶¶ 23, 24.) Finally, the Defendant admitted that on June 1, 2014, the Patient became eligible for Medicare because of ESRD and that the Defendant terminated the Patient's coverage under the Plan because the Patient became Medicare-eligible on that date. (Answer ¶¶ 25–27.)

The MSP Act and its accompanying regulations plainly prohibit a group health plan from terminating coverage when a member becomes Medicare-eligible based on an ESRD diagnosis. 42 U.S.C. § 1395y(C)(i) ("[a] group health plan . . . may not take into account that an individual is entitled to or eligible for benefits under [the end stage renal disease program.]"); 42 C.F.R. § 411.161(a)(1) ("A [group health plan] may not take into account that an individual is eligible for or entitled to Medicare benefits on the basis of ESRD during the coordination period . . . ."); 42 C.F.R. § 411.108(a)(3) ("Actions by [group health plans] that constitute taking into account that an individual is entitled to Medicare on the basis of ESRD . . . include . . . [t]erminating coverage because the individual has become entitled to Medicare . . . .").

The Defendant unpersuasively attempts to skirt these prohibitions. For example, the Defendant declares that the MSP Act applies only to active employees. This is not the case. The MSP Act and its accompanying regulations prohibit ESRD discrimination regardless of whether a person is an active employee or a retiree. 42 U.S.C. § 1395y(b)(1)(C)(i)–(ii) (no discussion of "current employment status"); 42 C.F.R. § 411.162(a)(1) ("Medicare is secondary to any [group health plan] (including a retirement plan), with respect to benefits that are payable to an individual who is entitled to Medicare on the basis of ESRD . . . ."). Thus, the MSP Act applies to the retiree Patient.

Next, the Defendant declares that state law terminated the Patient's benefits, and, as such, the Defendant complied with the MSP Act. Under the Indiana Code, a retired public safety employee[2] loses group health insurance eligibility "[w]hen the public safety employee becomes eligible for Medicare coverage as prescribed by 42 U.S.C. 1395 et seq." Ind. Code § 5-10-8-

---

[2] The Defendant asserts that the Patient is a public safety employee, and the Plaintiff does not contest this.

2.2(j)(1). The Indiana Code, therefore, incorporates the entirety of the Medicare statute, including the MSP Act, into its statutory scheme.

The Court could read this interplay two ways. First, under the Indiana Code, a retired public safety employee would lose group health insurance upon Medicare eligibility so long as the Medicare statute does not expressly prohibit such termination. Under this reading, the Defendant has not complied with the MSP Act, and therefore has not complied with the Indiana Code provisions incorporating the entirety of the Medicare statute.

The Defendant has a different interpretation. The Defendant insists that the MSP Act and the Indiana Code directly conflict, and that the Defendant therefore did not violate the MSP Act when it followed the Indiana Code. Assuming that the Defendant is correct and that the MSP Act directly conflicts with the Indiana Code, the MSP Act would preempt this portion of the Indiana Code under these circumstances. "Preemption may occur when . . . state law actually conflicts with federal law." *Myers v. Cent. Ins. Cos.*, No. 1:08-CV-96, 2009 WL 77258 (N.D. Ind. Jan. 8, 2009) (citing *English v. Gen. Elec. Co.*, 496 U.S. 72, 78 (1990)). If a federal law compels one result, and a state statute demands another, "the state statute is preempted to the extent that it directly conflicts with the federal law." *Cox v. Shalala*, 112 F.3d 151, 154 (4th Cir. 1997). Under the MSP Act, a group health plan cannot terminate an individual's coverage during the 30-month coordination period that begins when an individual first becomes Medicare-eligible based on ESRD. The Defendant claims that Indiana Code permits such an action. If these two statutes do conflict, as the Defendant contends, then the MSP Act preempts the Indiana Code to the extent necessary to effectuate the MSP Act's ESRD anti-discrimination prohibitions. Therefore, the Defendant stands in violation of the applicable law.

The Plaintiff has carried its burden and shown that the pleadings reflect no circumstances in which the Defendant complied with the MSP Act.

## CONCLUSION

For these reasons, the Court GRANTS Plaintiff Renal Care Group Indiana, LLC's Motion for Judgment on the Pleadings as to Count I [ECF. No. 24]. All remaining claims against the City of Fort Wayne remain pending.

SO ORDERED on November 2, 2017.

    s/ Theresa L. Springmann
CHIEF JUDGE THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT